WHEELOCK COLLEGE & others[1] *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & another.[2]

Suffolk.    May 6, 1976. — September 30, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Anti-Discrimination Law,* Prima facie case, Burden of proof.

Where a decision of the Massachusetts Commission Against Discrimi-
nation that an employer's action in terminating the employment of
a complainant was based on considerations of sex in violation of
G. L. c. 151B rested on a finding that the complainant had estab-
lished a prima facie case of sex discrimination, but the commission
appeared to abandon that position on appeal, this court did not un-
dertake to decide whether the complainant had proved sex discrimi-
nation without regard to the prima facie case but ordered the pro-
ceedings remanded to the commission. [134-135]
After the Massachusetts Commission Against Discrimination found that
an employee had established a prima facie case of sex discrimination
in violation of G. L. c. 151B, its treatment of the employer's response
to that proof as "not credible" and not otherwise supported by the
evidence was erroneous as matter of law where the reasons given by
the employer were legitimate and nondiscriminatory and where it
introduced evidence in support of its stated reasons. [136]
In a proceeding under G. L. c. 151B, a complainant may establish a
prima facie case of unlawful discrimination, thus shifting the burden
to the respondent to produce a nondiscriminatory reason, supported
by credible evidence, for its actions; the burden of persuasion, how-
ever, rests at all times with the complainant. [136-137]
Discussion of the proof necessary to establish unlawful discrimination
in violation of G. L. c. 151B. [137-139]

CIVIL ACTION commenced in the Superior Court on April
25, 1975.

The case was heard by *Linscott,* J.

[1] The other plaintiffs, who were respondents before the Massachu-
setts Commission Against Discrimination, are Margaret Merry, who
was president of Wheelock College from 1966 to 1971, and Robert
Meredith, Paul Ellison, and Philip Craig, who were full time members
of the English department at Wheelock College. There is no difference
in the position taken by the various plaintiffs and often we shall refer
to their collective arguments as those of the college.

[2] The other defendant is Constance D. Kehoe.

The Supreme Judicial Court granted a request for direct appellate review.

*Marc S. Seigle,* Assistant Attorney General, for the Massachusetts Commission Against Discrimination.

*John Taylor Williams* for Constance Kehoe.

*Thomas D. Burns (Robert T. Harrington* with him) for the plaintiffs.

WILKINS, J. We discuss for the first time the proof which is necessary to establish unlawful discrimination in violation of G. L. c. 151B and order that the proceedings be remanded to the Massachusetts Commission Against Discrimination (commission) for further consideration.

Wheelock College declined to renew the teaching contract of Constance D. Kehoe (Kehoe) for the 1971-1972 academic year. Kehoe, who held a part time teaching position, filed a complaint with the commission charging that she was terminated solely because of her sex in violation of G. L. c. 151B. An evidentiary hearing was held in December, 1971, before Commissioner Burres, the commission's acting chairman, who ordered the complaint dismissed on the ground that the conduct of the college and individual respondents did not constitute an unlawful practice under G. L. c. 151B, § 4 (1).

Kehoe appealed from the decision of the single commissioner to the full commission, which in May, 1972, without any explanation of its order, "revoked" the "decree" dismissing the complaint and remanded the case for further hearings "in order that the Respondent's [*sic*] case can be introduced and completed and a final decree rendered." A further hearing was held before Commissioner Burres in November, 1972. Commissioner Burres ceased to be a member of the commission before he made any formal ruling in the proceeding.

The matter then was reassigned to Commissioner Regina Healy for the purpose of preparing a decision. In June, 1974, Commissioner Healy filed findings of fact and conclusions of law, based solely on her reading of the transcript and her review of the exhibits, and entered an order

which directed that the college "reinstate" Kehoe for the 1974-1975 school year as a full time teacher with the rank and appropriate salary of associate professor and that she receive back pay on the basis of a full time salary. The college and the other respondents before the commission appealed to the full commission, and, with minor modifications, Commissioner Healy's decision and order was affirmed by the full commission in August, 1974. A further order was entered by Commissioner Healy in January, 1975, setting forth the amounts to be paid to Kehoe by the college for the academic years 1970-1971 through 1974-1975, inclusive. That further order was affirmed by the full commission on appeal, and the college and the other respondents before the commission filed a petition for review in the Superior Court challenging the commission's order. See G. L. c. 151B, § 6, and G. L. c. 30A. Kehoe was named as a defendant along with the commission.[3]

The judge of the Superior Court who heard the case on the record before the commission entered judgment for the plaintiffs. He took the position that "the case in the final analysis gets down to the following: A woman teacher was not rehired by a woman president of a predominantly women's college. This decision was solely the prerogative of its president. She agreed with the recommendations of the three full-time male members of the English Department." Because our review on the appeal of Kehoe and the commission is based on the record before the commission, unaffected by the judge's conclusions, we need not discuss the reasoning of the trial judge at any length. Of course, it was not his function to decide the case anew. Although he stood in as good a position as Commissioner Healy to pass judgment on the credibility of witnesses (be-

---

[3] The record contains docket entries for four petitions for review filed by the college and others, but the complaint in only one such petition, the fourth, appears in the record. The earlier petitions for review appear to have been filed in response to interlocutory orders of the single member or the full commission. No party makes any point concerning the existence of four petitions for review, and we shall treat the case as a single petition for review.

cause only retired Commissioner Burres had heard those witnesses), under the State Administrative Procedure Act the court must defer to the fact-finding function of the commission where there is substantial evidence to support its findings and there is no other error of law. See G. L. c. 30A, § 14 (7).

Commissioner Healy made findings of fact which we summarize. Kehoe joined the college's faculty in September, 1960. She holds advanced degrees, including a Ph.D. in English literature, and has outstanding academic credentials for teaching in institutions of higher learning. The college offers bachelor and master's programs in various fields but specializes in the training of elementary and preschool teachers.

During her first three academic years at the college (1960-1963), Kehoe taught full time. During her fourth year at the college, Kehoe's work load was somewhat reduced so that she might work on her doctoral dissertation. Because of pregnancy, her work schedule was substantially reduced for the 1964-1965 academic year. Although she expected to return to full time teaching in the next academic year (1965-1966), she was assigned only two courses, in effect a part time position. That year the college hired another full time person, a man, in the English department. All full time positions in the college's English department have been held by men, and substantially all part time positions have been held by women. After 1964, Kehoe repeatedly asked that she be returned to full time work.

Although the academic dean advised Kehoe in January, 1967, that she was not to be rehired for the next college year, Mrs. Merry, the new president of the college, rescinded that decision. Kehoe continued teaching part time during the next two academic years (1967-1969). In 1969-1970 she was granted a full leave in order that she might engage in further academic work. She taught part time during 1970-1971, but was granted a one-month maternity leave in May, 1971. In January, 1971, Kehoe requested full time work and a salary increase. When President

Merry did not agree to either request, Kehoe said she believed she had been discriminated against as a woman. In February, 1971, President Merry advised Kehoe that, on the unanimous recommendation of the full time members of the English department, her appointment would not be renewed.

Commissioner Healy concluded that the reasons given for not rehiring Kehoe were (1) Kehoe had made numerous changes in her teaching schedule, (2) she did not regularly attend meetings of the English department and college faculty, and (3) certain students complained. Commissioner Healy concluded that Kehoe's leaves of absence and schedule changes, apart from maternity leaves, were not substantially different from those of other members of the English department. She ruled that the assertion concerning absence from meetings was without merit because Kehoe had no clear obligation to attend departmental or faculty meetings. She agreed that some students complained about Kehoe's teaching methods, although others evaluated her favorably. Commissioner Healy found that Kehoe had "certain personality clashes and difficulties with certain members of the administration and faculty of the English Department" but attributed these conflicts and difficulties to "Respondents' annoyance and dissatisfaction at the Complainant's request for maternity leaves of absence, her high academic standards and her superior qualifications."[4]

A detailed analysis of what the commission determined is required in order to set forth the basic issues which face this court on appeal. This is not the typical appeal in which the sole function of the court is to review the record to determine whether there was substantial evidence to support an agency's decision. Here the single commissioner and the commission determined that Kehoe had estab-

---

[4] Commissioner Healy did not list personality differences as one of the reasons the college gave for its decision not to rehire Kehoe, although in justification for its decision the college clearly relied on the consequences of Kehoe's treatment of members of the administration, faculty, and student body.

Wheelock College *v*. Massachusetts Commission Against Discrimination.

lished a prima facie case of sex discrimination and that, under the principle of *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802 (1973), the burden shifted to the college, as the commission said, "to meet the issues with a defense that is credible, competent and reliable."[5]

Although the commission relied on the existence of a prima facie case of sex discrimination in arriving at its decision in Kehoe's favor and accepted Commissioner Healy's conclusion that the college's "stated reasons for [Kehoe's] termination are not credible and not otherwise supported by the evidence," in their briefs before us neither Kehoe nor the commission argues that Kehoe established a prima facie case of sex discrimination. Indeed, neither brief even cites the *McDonnell* case. Each brief does argue that there was substantial evidence to support a finding of sex discrimination. However, we do not read the commission's decision that the college's actions were based on considerations of sex as resting on a finding of sex discrimination in the absence of the support which proof of a prima facie case of sex discrimination provides.

If, as appears to be the case, the commission has abandoned the idea that a prima facie case was established by Kehoe, then the question is whether Kehoe has proved sex discrimination without regard to the prima facie case. We do not undertake to pass on this issue because neither the commission nor the Commissioner who ruled on this matter has done so. The matter must be returned to the commission for consideration of this unresolved question.[6]

---

[5] In the context of the *McDonnell* case a complainant could carry his initial burden under the applicable statute of establishing a prima facie case of racial discrimination by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp.* v. *Green, supra* at 802. The Court noted that in other factual situations the prima facie proof required of a complainant might be different. *Id.* at n.13.

[6] If the commission concludes, in spite of its abandonment of the point before us, that the evidence shows a prima facie case of sex dis-

There is a further reason to remand the proceedings to the commission. Even if Kehoe did prove a prima facie case of sex discrimination, the treatment of the college's response to that proof was erroneous as matter of law. Commissioner Healy's ruling that the college's stated reasons for not rehiring Kehoe were "not credible" and not otherwise supported by the evidence cannot survive analysis. The reasons given by the college were legitimate, nondiscriminatory reasons in the sense that the college advanced grounds for its action which would answer the prima facie case, and the college introduced evidence in support of its stated reasons.

The commission's statement that the rule in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), requires that respondents present a "defense that is credible, competent and reliable" misstates the holding of that case. All that is required by that decision in answer to the employee's prima facie case is that the employer "articulate some legitimate, nondiscriminatory reason" for its action. We think that "articulating" a reason in cases of this kind requires the employer to produce not only evidence of the reason for its action but also underlying facts in support of that reason. However, the employee then has the burden of persuasion on the issue whether the articulated reason was in fact the reason for the employer's action. Any consideration of whether the employer's defense was "competent" or "reliable" is clearly extraneous. Nor does the word "credible" fully describe the test to be applied. The first issue is not "credibility," but whether the reason is nondiscriminatory. The second issue, whether the reason given was the real reason or merely a pretext, may involve

crimination, then its decision should explain the nature of the proof on which it relies in finding a prima facie case. We would not find support for a prima facie case resting solely on the fact that the college declined to rehire a woman who was qualified academically to hold a teaching position where that teaching position was abolished. We note that the second and the fourth elements listed by the Supreme Court in the *McDonnell* opinion, quoted in n.5 above, are not present in the same form in this case.

questions of credibility, but here, as we have said, the burden of persuasion rests on the employee.

The commission's decision should have assessed all the evidence produced by the college to rebut any possible prima facie case. See *Katz* v. *Massachusetts Comm'n Against Discrimination,* 365 Mass. 357, 362-364 (1974). Commissioner Healy concluded that the college did not renew Kehoe's contract for three reasons and dismissed them as legally insufficient. However, even if we were to conclude that she applied the proper legal standard in reaching this result, she did not consider all of the college's reasons for its decision. The college gave more than three reasons for its decision. For example, in addition to personality differences discussed at n.4 above, the college offered evidence, not discussed by Commissioner Healy or the commission, which tended to show that Kehoe's teaching methods were not appropriate for the college's purposes. In any assessment of the bona fides of the college's reasons for not rehiring Kehoe, the asserted inadequacies in the quality of Kehoe's teaching practices should have been considered.

The proceedings must be remanded to the commission for further consideration in accordance with this opinion. Because the resolution of the basic factual issue in this case depends on the credibility of witnesses, the commission may conclude that it should order a complete rehearing on the complaint.

To assist the commission and parties appearing before it in this and in other proceedings, we set forth our views concerning the role of the commission and the proof required before it. Chapter 151B protects people against unlawful discrimination. It does not protect against all instances of arbitrary action or from poor managerial judgment. The commission should not substitute its judgment for that of a respondent before it.

We recognize, however, that proof of unlawful discrimination rarely can be established by direct evidence and that an employer's seemingly arbitrary action or pretended

explanation for a particular hiring judgment should not be permitted to justify conduct which is in fact unlawfully discriminatory. Thus we accept the principle that a complainant may prove a prima facie case of unlawful discrimination and shift the burden to the respondent to produce a lawful explanation for the treatment accorded the complainant. *McDonnell Douglas Corp.* v. *Green, supra* at 802. We also accept the principle, expressed in the better reasoned Federal cases dealing with analogous circumstances, that an employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons. See *Garrett* v. *Mobil Oil Corp.*, 531 F.2d 892, 895-896 (8th Cir. 1976) (race discrimination); *Olson* v. *Philco-Ford*, 531 F.2d 474, 477-478 (10th Cir. 1976) (race discrimination); *Rich* v. *Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975) (sex and race discrimination); *Potter* v. *Goodwill Indus.*, 518 F.2d 864, 865 (6th Cir. 1975) (race discrimination); *Peters* v. *Jefferson Chem. Co.*, 516 F.2d 447, 450 (5th Cir. 1975) (sex discrimination); *Holthaus* v. *Compton & Sons*, 514 F.2d 651, 653-654 (8th Cir. 1975) (sex discrimination); *Bittar* v. *Air Canada*, 512 F.2d 582 (5th Cir. 1975) (age discrimination); *Hodgson* v. *First Fed. Sav. & Loan Ass'n*, 455 F.2d 818, 822-825 (5th Cir. 1972) (age discrimination); *Taylor* v. *Safeway Stores, Inc.*, 365 F. Supp. 468, 472-473 (D. Colo. 1973), aff'd in part, rev'd in part on other grounds, 524 F.2d 263 (10th Cir. 1975) (race discrimination). Contra, *Abrams* v. *Johnson*, 534 F.2d 1226, 1231 (6th Cir. 1976) (race discrimination) (prima facie case shifts to the defendant not only the burden of going forward but also the burden of proof). Therefore, if the employee has proved a prima facie case of sex discrimination and the employer gives an explanation for a hiring decision which has no reasonable support in the evidence or is wholly disbelieved (and hence is transparently a pretext), the employee should prevail. On the other hand, if the reason given by the employer is the real reason for its action and it is a nondiscriminatory one, even if the commission thinks

the employer's action was arbitrary or unwise, the employer has fulfilled its obligation of stating a reason and producing support for the stated reason, thus rebutting the prima facie case.

The burden of proof of unlawful discrimination rests at all times with the complainant. He may meet that burden by establishing an unanswered prima facie case of discrimination. He may also meet that burden by proving by a preponderance of the evidence that the respondent's facially proper reasons given for its action against him were not the real reasons for that action.

In the further proceedings in this matter, the commission should limit its consideration to the subject of the complaint — the failure of the college to rehire Kehoe as a part time teacher. She did not complain seasonably to the commission that she was not given a full time teaching position or that she was denied the position of associate professor. The commission's conclusion that certain earlier actions of the college were continuing violations, even if correct (a point we do not decide),[7] cannot support relief beyond that sought by Kehoe herself.

The judgment is reversed. The proceedings are to be remanded to the commission for further action in accordance with this opinion.

*So ordered.*

---

[7] We note that the college, a nonprofit corporation, was not subject to G. L. c. 151B until 1969 when the definition of the term "employer" was amended to include a corporation not organized for private profit. St. 1969, c. 216.